## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**DIANA MARIA SERNA PERALTA**          *
Via Circunvalar
Via al Castillo #152                               *
Unidad Residencial Cocli – Casa 20
Jamundí, Valle del Cauca                       *
Colombia
                                                              *

      **Petitioner,**

                             *          **Civil No.**

**v.**
                                                              *

**CRISTIAN PORTOCARRERO RIOS**     *
2366 Snapdragon Drive NW
Palm Bay, Florida 32907                         *

      **Respondent.**                            *

                             *

## VERIFIED PETITION FOR RETURN OF CHILD TO COLOMBIA AND REQUEST FOR ISSUANCE OF SHOW CAUSE ORDER

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001** *et seq.*

## INTRODUCTION

1.    Petitioner, Diana Maria Serna Peralta ("Mother"), by and through her undersigned attorneys, files this Verified Petition for Return of Child to Colombia ("Petition"), against Respondent, Cristian Portocarrero Rios ("Father").

2.    This Petition is filed as a result of Father's wrongful retention in the United States of the parties' daughter, Z.P.S. (the "child" or "daughter"), born in Colombia in 2011.  The child's proper custody and habitual residence is Colombia.

1

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

3.     Father retained the child in the United States on or about January 8, 2022, when he did not return the child to her habitual residence of Colombia at the conclusion of a two-week holiday visit from December 25, 2021 through January 8, 2022.

4.     This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act[2] (hereinafter "ICARA").

5.     The Convention came into force in the United States of America on July 1, 1988, and was ratified between the United States of America and Colombia on June 1, 1996.[3]

6.     The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10,493 (1986), text available at:  https://www.hcch.net/en/instruments/conventions/specialised-sections/child-abduction   (last accessed December 30, 2022).
[2] 22 U.S.C. 9001 *et seq*. (2015).
[3] *See* Hague Abduction Convention Country List, text available at:
https://travel.state.gov/content/childabduction/en/country/hague-party-countries.html (last accessed December 30, 2022).

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

## JURISDICTION

7.      This Court has jurisdiction under ICARA § 9003 because this case involves the wrongful retention of a child under the age of sixteen in the United States from the child's habitual residence of Colombia, and the child is currently located within the jurisdiction of this Court in Brevard County in the Middle District of Florida.

## FACTS

8.      Mother and Father are the parents of one daughter, Z.P.S., who is 11 years old.

9.      Since the child's birth (until Father's retention of the child in the United States), Mother and the child have resided without interruption in Colombia.

10.     From the time of the child's birth in Colombia, the child has always been and continues (until Father's retention of the child in the United States) to be fully involved and integrated in all aspects of daily and cultural life in Colombia, including but not limited to the following ways:

  a.  The child was born at a hospital in Cali, Colombia.

  b.  The child has Colombian citizenship and holds a Colombian passport.

  c.  The child lives in Colombia at Mother's home. Mother owns a home in Colombia in a private community. The child has her own room in the home and has clothing and personal belongings there.

  d.  The child's Father has previously lived and worked in Colombia.

3

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

e.  The child's Father has the ability to travel to, live in, and work in Colombia.

f.  The child has immediate and extended family in Colombia, including her maternal relatives and some paternal relatives.

g.  The child spends time with her family in Colombia. Father's mother has come to visit the child at her home in Colombia.

h.  The child has a settled routine in Colombia.

i.  The child has spent parenting time with both parties in Colombia.

j.  The child receives medical care in Colombia. The child has her pediatrician, obtains immunizations, and attends medical appointments in Colombia. She has had such medical care in Colombia since her birth. Mother is fully involved in the child's medical care in Colombia.

k.  The child has attended private school in Colombia since being eligible to start school. She attended in Colombia the Colegio Liceo Ideas Infantiles for kindergarten through third grade. She attended in Colombia the Colegio Mayor San Francisco de Asis for fourth grade. She attended in Colombia the Colegio Berchmans for fourth grade (due to her young age and upon the school's recommendation) and fifth grade until Father's wrongful retention. Mother is fully involved in the child's education in Colombia and pays for the private school tuition.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

l.   The child has friends in Colombia.

m. The child engages in extracurricular activities, including dance, English classes, and volleyball in Colombia.

11.     The child is fully involved and immersed in day-to-day family life, cultural life, and education in Colombia. The totality of the child's life is in Colombia.

12.     Mother is a citizen of Colombia and has lived in Colombia her entire life. Mother speaks Spanish fluently. She requires a Spanish-English interpreter.

13.     Father is a dual citizen of Colombia and the United States. Father has lived and worked in either Colombia or the United States since the child's birth.

14.     The parties met online initially and then started dating in 2008 in Colombia while Father was searching for his biological father there. At the time, Father lived in the United States.

15.     After the parties met, Father moved to Colombia to continue his relationship with Mother and to establish a family there.

16.     The parties married on March 22, 2009.

17.     The parties' daughter was born in Colombia in 2011. Both parties are identified on the child's birth certificate.

18.     By virtue of the parties' respective nationalities, the child is a dual citizen of Colombia and the United States. The parties jointly arranged for the child to be issued a Colombian passport and, while residing in Colombia, also a United States passport.

19.     The parties began experiencing marital difficulties in or around 2014.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

20.   In January 2015, Father traveled to the United States for U.S. Army training. Upon information and belief, shortly thereafter, he received a decision that he did not meet the requisite psychological standards and was not enlisted. Father remained living in the United States because, in part, he did not have the financial ability to return to Colombia and join his family there.

21.   In 2016, the parties tried, unsuccessfully, to reconcile and repair their marriage. Thereafter, the parties decided to separate.

22.   In May 2017, Father traveled to Colombia to spend time with the child for her birthday.

23.   In 2018, the parties engaged in an administrative process in Colombia to prepare an uncontested divorce and custody agreement. Father traveled to Colombia to finalize the parties' divorce and custody agreement.

24.   On September 27, 2018, the parties signed and notarized in Colombia a custody and divorce agreement that was registered on November 29, 2018 by Public Deed (No. 3395) in the 11th Notary Public of Cali in Colombia. The parties' valid agreement was approved by the Instituto Colombiano de Bienestar Familiar, which is the administrative body authorized to approve custody agreements in Colombia.[4]

25.   Pursuant to the terms of the Colombia custody agreement, *inter alia*: a) the parties agree to jointly exercise parental authority; b) the parties agree that the

---

[4] Father admits to signing the agreement establishing custody and divorce terms. However, he contests the validity of the document because he claims, incorrectly, that the final agreement was longer than he recalls.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

child's custody and residence is with Mother in Colombia; c) the parties agree that Father shall provide child support, including clothing and school uniforms, to Mother; d) the parties agree that Father may visit with the child in Colombia provided his access does not interfere with the child's school; and e) the parties agree that the child may travel to Father's residence once per year for a visit.

26.     After the parties' divorce, the child continued to live with Mother and continued to have parenting time with Father on dates and times mutually agreed between the parties.

27.     Father continued to live in the United States. He lives in Florida with his mother, his wife, and their infant child. Mother of course wants the child to have meaningful relationships with each of her extended families.

28.     In 2019, Father did not visit Colombia or spend any parenting time with the child.

29.     In 2020, due to the COVID-19 pandemic, Father did not visit Colombia or spend any parenting time with the child.

30.     In 2021, Father traveled to Colombia to spend parenting time with the child and to renew the child's Colombian passport.

31.     Later in 2021, the parties agreed that Father and the child would visit Father's family in Florida one time per year during school breaks. The parties agreed that the child would return to the family home in Colombia after any visits to Florida.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

32.     The first trip Father took with the child to visit family in the United States was during the summer of 2021.[5] The parties discussed the summer trip in advance and Mother of course agreed to the visit for Father and child to spend time with Father's extended family during the child's summer break from school in Colombia.

33.     Father traveled to Colombia to pick up the child in June 2021 and traveled with the child to the United States. At the conclusion of the summer break, in August 2021, Father returned the child home to Colombia as agreed.

34.     In October 2021, the parties agreed to an additional trip for the child to visit Father in the United States during her winter break from school.

35.     The parties agreed that the child would visit Father in the United States from December 25, 2021 through January 8, 2022.

36.     The parties notarized and recorded before the Special Administrative Unit for Migration in Colombia a travel authorization for the two-week holiday vacation from December 25, 2021 through January 8, 2022.

37.     Father told Mother that he purchased roundtrip tickets for the child to travel from home in Colombia to the United States on December 25, 2021 and return home to Colombia on January 8, 2022. The return date was selected to ensure the child would return home to Colombia with little to no interruption to her school routine.

---

[5] The parties agreed to temporarily suspend Father's child support obligations under the Colombian divorce and custody agreement for the duration of this summer trip.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

38.     On December 24, 2021, Father traveled to Colombia and picked up the child at home in Colombia.

39.     On December 25, 2021, Father traveled with the child for the two-week holiday visit to the United States.

40.     Father had previously returned the child to Colombia after the agreed summer break trip. Mother therefore had no reason to suspect that Father planned to retain the child away from her home in Colombia.

41.     During the two-week holiday visit, Mother maintained contact with the child by video and telephone.

42.     On January 7, 2022, as the return date approached, Father informed Mother that he tested positive for COVID-19 and stated that he may not be able to travel with the child as planned.

43.     On January 8, 2022, Father did not return the child home to Colombia.

44.     On January 9, 2022—one day after the child was due to return home to Colombia—Father informed Mother that he would not return the child to Colombia until the end of February because of contracting COVID-19 and his employment.

45.     Mother immediately informed Father that she did not consent or agree to his unilateral extension of the two-week holiday vacation and requested that the child be returned to Colombia immediately as agreed.

46.     On January 10, 2022—two days after the child was due to return home to Colombia—Father informed Mother that he would not return the child to Colombia as agreed. He stated that he was enrolling the child into school in Florida and that the

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

child would finish school in Florida.[6] Father also stated, on January 11, 2022, that he wanted to renegotiate the parties' Colombian custody agreement and have any renegotiated agreement be determined by a court in the United States.

47.     Mother immediately replied to Father that he does not have her consent to unilaterally retain the child in the United States past the January 8, 2022 return date. Mother also replied that she does not consent to his unilateral enrollment of the child in a school in Florida and requested that the child be returned to Colombia immediately as agreed. Mother offered to have her cousin who was present in the United States bring the child home to Colombia. Father rejected Mother's offer.

48.     Shortly thereafter, Father began informing Mother that he would return the child to Colombia in March or April of 2022. Mother immediately informed Father, again, that she did not agree to Father's unilaterally extended holiday trip.

49.     With the benefit of hindsight, what was upon information and belief a delay tactic to try to establish custody jurisdiction in Florida went on for months.

50.     Upon information and belief, Father kept the child in Florida for a period of six months so that he could attempt (wrongly) to invoke the jurisdictional provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), and pursue a child custody case in the Florida state family court.[7]

---

[6] Upon information and belief, since Father's wrongful retention, Father has unilaterally enrolled the child in school in Florida as of January 10, 2022.

[7] The UCCJEA governs a Florida's state court's subject matter jurisdiction to enter child custody orders. *See* Fla. Stat. § 61.514 (providing that a Florida state court has subject matter jurisdiction to make an initial child custody determination if Florida is the "home state" of a child on the date of commencement of proceedings); *see also* Fla. Stat. § 61.503 (defining "home state" as the state in which a child has lived with a parent for at least six consecutive months immediately before the

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

51.     Father continued to demand that Mother renegotiate the established custody and child support agreement that was entered into in Colombia. Father demanded that, as part of his coerced renegotiation tactic, Mother agree that Father did not unilaterally retain the child in the United States. Mother did not agree.

52.     When the child was not returned home to Colombia on January 8, 2022, and Father refused to resolve the matter directly with Mother, Mother began researching the legal remedies available to her to seek the return of the child to Colombia.

53.     After conducting research on the remedies available to her, Mother learned about the Hague Convention and the available remedies under the Convention.

54.     In March 2022, Mother therefore promptly submitted her Hague Convention Application for Return to the Central Authority in Colombia (the Colombian Institute of Family Welfare) in accordance with the Convention, seeking the return of the child to Colombia.

55.     Father then told Mother that he would return the child to Colombia in June 2022. Mother purchased a one-way return ticket to Colombia for the child's belated return to Colombia on June 20, 2022. Mother provided a copy of the airline travel ticket to Father.

---

commencement of a child custody proceeding). Of course, the Hague Convention trumps any such action. Convention, art. 16.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

56.     After Mother purchased the return ticket, Father told Mother that he could not return the child to Colombia without police authorization. Father is a Deputy Sherriff for the Brevard County Sherriff's Office. In hindsight, Father's actions were a further delay tactic. [8]

57.     Since Father's retention of the child in the United States, Mother has repeatedly tried to speak with Father to resolve the matter relating to their child's return, and to have Father return the child home to Colombia without the need for any litigation.

58.     Unfortunately, throughout Father's wrongful retention of the child in the United States, Mother's communications with the child have been sporadic and strained.

59.     When Mother learned for the first time the true nature of Father's situation in Florida—namely, that Father has unilaterally decided that the child is not returning to Colombia, in breach of the parties' agreement—Mother was distraught. Mother spoke with the child and had a stern conversation that potentially upset the child. This type of conversation is not a usual occurrence in their close mother-daughter relationship.

---

[8] Father's retention of the child in the United States is, upon information and belief, a criminal violation of Colombian law. In researching the remedies available to her and after Father failed to return the child on June 20, 2022, Mother alerted the Colombian authorities of Father's retention; however, Mother has no desire to pursue criminal action against Father. Instead, Mother is pursuing civil remedies through this Court by requesting the return of the child to her proper custody jurisdiction and habitual residence of Colombia.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

60.     In or around July/August 2022, approximately four months after Mother submitted her application, Mother's Hague Convention Application for Return was transmitted by the Central Authority for Colombia to the United States Department of State Office of Children's Issues (the United States Central Authority).

61.     On August 1, 2022, the United States Central Authority sent Father a letter (in English and Spanish) informing him that it had received Mother's Hague Application. The Central Authority's letter inquired as to whether Father would agree to voluntarily return the child to Colombia and requested a response.

62.     On August 2, 2022, Father responded to the voluntary return request.

63.     In Father's response, he claims, *inter alia*, that a) the final custody and divorce agreement in Colombia is different than what he signed and agreed; b) the living conditions and food for the child in Colombia are inadequate; c) the child spends too much time at her grandparents' home in Colombia; d) the child's use of a razor to shave is inappropriate; e) the child has expressed preferences to Father; f) the parties have not reached any amended agreement regarding custody; and g) Florida allegedly has custody jurisdiction.[9]

64.     Father's claims, except for the claim that the parties have not reached any amended agreement regarding custody, are untrue.

---

[9] Mother's undersigned counsel has searched the public records in Brevard County but has not located any open case. If Father did open a custody case in Florida, the case is required to be stayed pursuant to Article 16 of the Hague Convention.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

65.     As of the time of the wrongful retention on or about January 8, 2022: a) Father acknowledges the existence of the parties' custody agreement in Colombia yet intentionally breaches that agreement; b) the child lives with Mother, who is an attorney in Colombia, in a safe and private community and has adequate food; c) the child is enrolled in fifth grade in an excellent private school in Colombia; and d) Mother, in an age-appropriate way, helps the child with her hygiene.

66.     During Mother's limited communications that Father has allowed with the parties' daughter, the daughter has sounded coached and monitored and unable to express herself. Upon information and belief, the child wishes to return home to Colombia and to her Mother.

67.     Mother has waited as long as she possibly can and has exhausted all efforts to resolve this matter amicably before having to initiate this proceeding.

68.     Father refuses to return the child home to Colombia.

69.     From the totality of the circumstances perspective, Colombia is the child's habitual residence.

70.     The child has lived in Colombia since her birth and has never resided in the United States or anywhere else outside Colombia.

71.     The parties never had a shared intent for the child to live anywhere other than Colombia. The parties only shared, settled intent with respect to the child's habitual residence has been that the child will reside in Colombia.

72.     The parties agreed to a short vacation for the child with Father in Florida—for two weeks from December 25, 2021 until January 8, 2022—and for the

14

child to return home to Colombia on January 8, 2022. Mother never agreed to any extension of this two-week holiday trip.

73.     Mother would not have agreed to the two-week holiday trip to Florida had she known that Father was going to retain the child in the United States.

74.     Mother did not and does not consent to the child living anywhere other than Colombia, or living in the United States temporarily, permanently or indefinitely, or being retained in the United States from Colombia.

75.     Mother has not acquiesced in Father's retention of the child in the United States from Colombia.

76.     At the time of Father's retention, Mother had (and continues to have) rights of custody to the child in Colombia, by operation of Colombia law and pursuant to the parties' agreement, as fully set forth below.

77.     Father's retention of the child in the United States from Colombia breaches Mother's rights of custody under Colombian law.

78.     With the assistance of the United States Central Authority, Mother has now been able to find and retain reduced-fee representation in seeking the return of the child to Colombia through this Petition for Return in this Court.

## COUNT I – WRONGFUL RETENTION

79.     Mother restates and re-alleges the averments contained in Paragraphs 1 through 78 as if fully set forth herein.

80.     The Convention applies to cases in which a child under the age of sixteen (16) years has been removed or retained from his or her habitual residence in breach

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

81.     The child in this case is under the age of 16.

82.     The habitual residence of the child is Colombia.

83.     The child has resided in Colombia for all her life by agreement of the parties. At the time Father retained the child, the child has only lived in Colombia.

84.     The parties never agreed for the child to live outside of Colombia, and never agreed for the child to live in the United States.

85.     The child is fully involved in all aspects of daily family life and cultural life in Colombia. Based on the facts of the family's history, the parties' shared intent for the child to live in Colombia, the child's perspective of home as Colombia, the child's routine and settled life in Colombia, and the totality of the circumstances, the child's habitual residence is Colombia.

86.     Notice is given in this pleading that Mother is relying upon foreign law. Fed.R.Civ.P. 44.1.

87.     Colombia's Civil Law governs the application of law as it relates to Mother's rights of custody.

88.     At the time Father retained the child in the United States from Colombia, Mother had—and continues to have—rights of custody to the child pursuant to the

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

parties' agreement and pursuant to operation of Colombian law under the Colombian Civil Code and the Colombian Childhood and Adolescence Code.[10]

89.     Pursuant to the parties' agreement, which was approved by the Instituto Colombiano de Bienestar Familiar and which was adopted, signed, and notarized by the parties before a Notary Public in Colombia, *inter alia*: a) the parties agree to jointly exercise parental authority; and b) the parties agree that the child's custody and residence is with Mother in Colombia.

90.     Title XII of the Colombian Civil Code[11] sets forth the rights and duties between parents and children. Article 253 provides: "The parents, or the surviving father or mother, share the personal care of the upbringing and education of their children."

91.     Title XIV of the Colombian Civil Code sets forth the rights of "*patria potestas*" (known as parental authority). Article 288 defines parental authority as "the set of rights that the law recognizes for parents regarding their non-emancipated children, to facilitate compliance with the duties that their role imposes on them." "Together the parents are responsible for exercising parental authority over their children. In the absence of one of the parents, the other will exercise it." *Id.*

92.     Article 110 of the Colombian Childhood and Adolescence Code provides Mother, by operation of law, a *ne exeat* right of custody in that it requires parental

---

[10] *See, e.g.*, *Garcia v. Angarita*, 440 F.Supp.2d 1364 (S.D. Fla. 2006).
[11] An English translation of the Colombian Civil Code and Colombian Child and Adolescent Code was provided by the Colombian Central Authority to the United States Central Authority.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

consent for a child who resides in Colombia to travel or reside abroad. Mother exercised this right by providing a travel authorization granted before Notary Public 5 of the city of Cali for the child to travel from Colombia to the United States for the two-week holiday visit with a return date to Colombia on January 8, 2022.

93. Article 14 of the Colombian Childhood and Adolescence Code defines "parental responsibility" as the "complement to parental authority established in civil law. It is also the obligation inherent to the guidance, care, accompaniment and upbringing of children and adolescents during their raising process. This includes the shared and joint responsibility of the father and mother to ensure that children and adolescents can achieve the highest level of satisfaction of their rights."

94. Parental authority and parental responsibility involve the "care of the child" and is recognized as a right of custody under Article 5*a* of the Hague Convention.[12]

95. Mother is the biological mother of the child, is named on the child's birth certificate, and the parties agreed in Public Deed No. 3395 of November 29, 2018 in Colombia that Mother shall exercise custody of the child and the child shall live with Mother in Colombia.

96. Mother therefore has rights of custody, namely parental authority and parental responsibility for the child, pursuant to operation of Colombian law.

---

[12] *See, e.g., Hanley v. Roy*, 485 F.3d 641, 647–48 (11th Cir. 2007).

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

97.     Mother has these rights of custody by operation of law and pursuant to the parties' agreement. She had these rights of custody (and continues to have these rights of custody) at the time Father retained the child in the United States from Colombia on or about January 8, 2022.

98.     At the time of Father's retention of the child in the United States, Mother was actually exercising—or would have been actually exercising but for Father's retention—her custody rights, within the meaning of Articles 3 and 5$a$ of the Convention, by caring for the child, fully participating in the child's life, and undertaking all parenting responsibilities since the child was born.

99.     Father's retention of the child in the United States from Colombia is therefore wrongful under the Hague Convention because Father has (1) retained the child in the United States; (2) from the child's habitual residence of Colombia; (3) in breach of Mother's rights of custody to the child under Colombian law; and which (4) Mother was exercising at the time of the retention (or would have been exercising but for Father's wrongful retention).

100.    Mother has timely taken all legal steps available to her first to seek an amicable solution in accordance with article 7 of the Hague Convention, and now to seek the return of the child to Colombia in accordance with the Hague Convention.

101.    The child is currently physically located within the Middle District of Florida in Brevard County.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

## COUNT II – ARTICLE 18 RETURN

102.   Mother restates and re-alleges the averments contained in Paragraphs 1 through 101 as if fully set forth herein.

103.   Mother invokes Article 18 of the Convention, which grants this Court plenary power to order the child's return at any time.[13]

104.   In accordance with the Article 18 equitable return factors set forth in Justice Alito's concurring opinion in *Lozano v. Montoya Alvarez*, Mother requests that this Court exercise its equitable discretion to return the child to Colombia under Article 18 even if Father establishes one of the Convention's five narrow discretionary exceptions to return under the Convention.[14]

105.   The child here has an interest in returning to Colombia, her country of habitual residence.

106.   The child has close ties with Colombia; in particular, she has close ties to: (a) Mother; (b) her friends; (c) her extended family; (d) her activities; (e) her medical care; (f) her school; and (g) her Colombian culture.

107.   The child has a strong need for regular daily contact with Mother, who is the child's primary caretaker and who was exercising rights of custody at the time the child was retained in the United States from Colombia.

---

[13] *See* Convention, art. 18; *see also* 51 Fed. Reg. 10,494, 10,509 (1988) (legal analysis of the Hague Convention by the U.S. Department of State); *Lozano v. Alvarez*, 134 S.Ct. 1224, 1237 (2014) (Alito, J., concurring); *In re B. Del C. S. B.*, 559 F.3d 999, 1015-16 (9th Cir. 2009); *Alcala v. Hernandez*, 826 F. 3d 161 (4th Cir. 2016).

[14] *See Lozano*, 134 S.Ct. at 1237 (Alito, J., concurring) (listing factors that weigh in favor of returning a child to the country of habitual residence even when a narrow discretionary exception to return is established).

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

108.    Father is now severely restricting meaningful in-person contact between the child and Mother.

109.    Mother has an interest in exercising her Colombian rights of custody in Colombia, which she was doing at the time Father retained the child in the United States.

110.    The governments of Colombia and the United States both have an interest in discouraging inequitable conduct and deterring international child abductions.

## PROVISIONAL AND EMERGENCY REMEDIES[15]

111.    Mother is cognizant that this Court may permit videoconference and teleconference hearings. Mother therefore requests expedited relief consistent with the Hague Convention, Eleventh Circuit authority, and this Court's Administrative Orders in such a manner as to minimize any burden or disruption on the Court and the United States Marshal Service, while at the same time ensuring this Court is seized with jurisdiction over this Hague Convention matter and the child.

112.    Simultaneously with the filing of this Petition, Mother files a Time-Sensitive Request to Expedite Proceedings Pursuant to Hague Convention Law (with Incorporated Memorandum of Law).

---

[15] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." ICARA § 9004.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

113.    Mother requests that this Court issue a Show Cause Order forthwith[16] due to the expedited nature of this child abduction case and pursuant to the Hague Convention, the mandate of the United States Supreme Court, the implementing statute and relevant Eleventh Circuit authority.

114.    Mother requests that the initial Show Cause Order: i) direct the United States Marshals Service to serve this Court's initial Show Cause Order and all other pleadings and papers filed in this case on Father; and ii) set an expedited telephone or video status/scheduling hearing for Father to appear, or for Father's counsel to appear if he has retained counsel, and for Mother's counsel to appear on her behalf, on the first available date on the Court's calendar in order to schedule the expedited evidentiary hearing and all related deadlines.

115.    Mother further requests that this Court's initial Show Cause Order include provisions: i) prohibiting the removal of the child from the jurisdiction of this Court during the pendency of the proceeding in this Court; and ii) ordering that Father forthwith deliver all the child's passports and other travel documents to the Clerk of this Court to be held in escrow during the pendency of the proceedings.[17]

---

[16] Such an approach is consistent with the approach of other district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention.  See *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1343 (S.D. Fla. 2002).

[17] A Petition may also be treated as an application for a Writ of Habeas Corpus itself. *Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128, 132 (D.Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus . . . pursuant to 28 U.S.C.A. § 2243").

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

116.   Father has demonstrated that he is a substantial flight risk, having unilaterally announced that he is keeping the child in the United States from her home in Colombia.

117.   Upon information and belief, Father has access to financial and law enforcement resources, and therefore has the ability to remove the child outside of Florida to a different state or country outside of this Court's jurisdiction.

118.   Unless this Court takes immediate action to issue a Show Cause Order, irreparable harm will occur to the well-being of the child in that she will be deprived of her Mother, her home, her school, and her life in Colombia.

119.   Pursuant to ICARA § 9004, in a proceeding for the return of a child, "[n]o court exercising jurisdiction … may … order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied."  ICARA § 9004.  In this case, the referenced State law is Florida.

120.   In Florida, the UCCJEA is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as Fla. Stat. § 61.501 *et seq*.

121.   Florida law addresses the appearance of the parties and the child in such cases in § 61.523 of the UCCJEA. That section authorizes this Court to order the appearance of the child and custodian or custodians *together. Id.* This Court therefore has the authority to issue a show cause order, ordering the appearance of Father (remotely or in person) in that the provisions of 22 U.S.C. § 9004 can be met.

23

122.   The Court may of course fashion any other remedy to establish that the child is within the jurisdiction in keeping with the expedited nature of these proceedings.

123.   Mother is unable to travel to the United States for the final evidentiary hearing in this case because Mother is not a United States citizen and is unable to obtain a travel visa in an expedited fashion. Mother will therefore separately file in this Court if required a Motion for Testimony by Contemporaneous Transmission, seeking permission of this Court for Mother to testify by contemporaneous transmission at the evidentiary hearing.

124.   Mother requests that her appearance be excused for the initial Show Cause hearing. Mother's counsel will appear on her behalf at the Show Cause Hearing, and will have full authority to schedule all further hearings and deadlines in this case.

125.   In accordance with the Hague Convention Articles 2 and 11, ICARA, 28 U.S.C. § 1657, and the requirement of the Supreme Court of the United States that courts use the most expeditious procedures available, and the good and meritorious cause to expedite consideration of Mother's Petition, Mother respectfully requests that this Court enter an initial Show Cause Order forthwith in the form submitted to this Court, setting an expedited date for a video or telephone status/scheduling hearing, on the first date available on the Court's calendar, and thereafter allowing for full resolution of this matter within six weeks of the date of filing this Petition.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

## UCCJEA DECLARATION

126.  The details regarding the minor child that are required to be provided under the UCCJEA are as follows:

a   The child has been physically located at the following address, with Father, from December 25, 2021 until on or about January 8, 2022, as a result of the parties' agreement, and from on or about January 8, 2022 to present as a result of Father's wrongful retention of the child at: 2366 Snapdragon Drive NW, Palm Bay, Florida 32907.

b   From in or about June 2021 until on or about January 8, 2022 (as a result of Father's retention), the child resided with Mother at: Via Circunvalar, Via al Castillo #152, Unidad Residencial Cocli – Casa 20, Jamundí, Valle del Cauca, Colombia.

c   From approximately June 2017 until in or about June 2021, the child resided with Mother at: Carrera 61 # 9 - 265 Apartamento 501 Unidad Residencial Fundadores - Cali, Valle del Cauca, Colombia.

d   Mother does not have information of any custody proceeding concerning the child pending in any other court of this or any other State, except as set forth in this Petition.

e   Mother does not know of any person, or institution, not a party to the proceedings, which has physical custody of the child or claims to have rights of parental responsibility or legal custody or physical custody of, or visitation or parenting time with the child.

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

**NOTICE OF HEARING**

127.    Pursuant to ICARA § 9003(c), Father will be given notice of any hearings in accordance with Sections 61.509 and 61.518 of Florida's UCCJEA.[18]

**ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION
EXPENSES PURSUANT TO CONVENTION
ARTICLE 26 AND ICARA § 9007**

128.    Mother has incurred significant expenses as a result of the wrongful retention of the child by Father. Mother will submit, in accordance with the Federal Rules of Civil Procedure and the Middle District's local rules, a copy of all attorneys' fees, expenditures and costs, according to proof, incurred as a result of Father's wrongful retention.

129.    Mother respectfully requests that this Court award all reasonable and necessary expenses and attorneys' fees and costs incurred to date as required by ICARA § 9007, reserving jurisdiction over further expenses.

**RELIEF REQUESTED**

**WHEREFORE**, Petitioner, Diana Maria Serna Peralta, respectfully requests the following relief:

A. That this Court issue an Order directing the prompt return of the child to her habitual residence of Colombia in accordance with Petitioner's rights of custody under Colombian law and Articles 3, 5*a* and 18 of the Convention; and

---

[18] The Convention itself does not specify any specific notice requirements. ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. ICARA § 9003(c).

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

B. That this Court issue an initial Show Cause Order forthwith in the form submitted by undersigned counsel, directing the United States Marshals Service to serve this Court's initial Show Cause Order and all other pleadings and papers filed in this case on Respondent; and

C. That the Court's initial Show Cause Order set an expedited telephone/video status/scheduling hearing for the parties' respective counsel to appear, or for Respondent to appear if he has not retained an attorney, on the first available date on the Court's calendar to schedule the final evidentiary hearing and all related deadlines; and

D. That the Court's Show Cause Order include provisions: i) prohibiting the removal of the child from the jurisdiction of this Court during the pendency of the proceeding in this Court; and ii) ordering that Respondent forthwith deliver all the child's passports and other travel documents to the Clerk of this Court to be held in escrow during the pendency of the proceedings; and

E. That this Court excuse the appearance of Petitioner at the initial Show Cause Hearing as long as Petitioner's counsel appears on her behalf and has full authority from Petitioner to schedule an expedited evidentiary hearing and all related deadlines; and

F. That this Court permit Petitioner to appear and testify by contemporaneous transmission at the expedited evidentiary hearing; and

G. That this Court order daily electronic video and telephone access for Petitioner with the child during the pendency of these proceedings; and

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

H. That if Respondent removes the child or causes the child to be removed from the jurisdiction of this Court, that this Court issue an Order directing that the name of the child be entered into the national police computer system (N.C.I.C.) missing persons section, and that an arrest warrant be issued for Respondent; and

I. That this Court issue an Order directing Respondent to pay Petitioner's reasonable and necessary expenses, including but not limited to attorneys' fees, suit money, expenses, and costs; and

J. That this Court grant any such further relief as justice and Petitioner's cause may require.

## VERIFICATION

PURSUANT TO 28 U.S.C.A. §1746, UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, I DECLARE THAT THE FOREGOING VERIFIED PETITION FOR RETURN HAS BEEN TRANSLATED INTO SPANISH, THAT I UNDERSTAND FULLY THE FACTUAL AVERMENTS CONTAINED THEREIN, AND THAT THE FACTS STATED IN IT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

EXECUTED ON __12 / 30 / 2022_____.

_Diana Maria Serna Peralta_
_____
Diana Maria Serna Peralta
*Petitioner*

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34

Respectfully submitted this __3rd__ day of January, 2023.

/s/ Leah Ramirez
Leah Ramirez
Florida Bar No. 1002771
MARKHAM LAW FIRM
2154 Wisconsin Avenue NW
Washington, DC 20007
(240) 858-8716
(301) 368-2774 (e-fax)
LRamirez@markhamlegal.com

*Attorneys for Petitioner*

Doc ID: 15570cdfd25d1236b6e3114fdff7087c7433ab34